Argued and submitted February 9, 1999, affirmed May 3, 2000

In the Matter of the Compensation of
Dustin Luckhurst, Claimant.

Dustin LUCKHURST,
*Petitioner,*

*v.*

BANK OF AMERICA,
*Respondent.*

(WCB No. 97-03907; CA A102856)

1 P3d 1031

Robert G. Dolton argued the cause for petitioner. On the brief was Pil S. Hwang.

Paul L. Roess argued the cause for respondent. With him on the brief was Moscato & Hallock.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

**DEITS, C. J.**

Claimant seeks review of a Workers' Compensation Board (Board) order that upheld employer's denial and held that claimant's current left knee condition was not compensable. Claimant contends that the Board erred in concluding that he suffered from a combined condition and in applying the legal standard of ORS 656.005(7)(a)(B), rather than that of ORS 656.225(1). We review for errors of law and substantial evidence and affirm.

We derive the facts from the ALJ's findings, the Board's summary of those findings—which it adopted—and from the medical evidence in the record. Claimant was injured on December 4, 1996, while he was working as a courier for employer. Claimant was moving a 32-gallon trash can containing approximately 75 to 80 pounds of paper. The can was on a wheeled platform, and when claimant attempted to lift the can onto a curb, the wheels came off. Claimant tripped, fell forward, and landed on his left knee on the flat edge of the concrete curb. Claimant sought and received medical treatment, and his claim was accepted as a "left knee contusion."

Claimant's left knee significantly improved until February 1, 1997, when he felt severe pain as he bent forward and "touched" his knee to the ground. An MRI revealed an osteochondral fragment "consistent with osteochondritis dissecans." Employer issued a denial, asserting that claimant's current condition, need for treatment, and disability were not compensable. Ultimately, claimant twice had arthroscopic surgery in an attempt to remove the fragment or fragments. Following the second surgery, claimant has done well.

Claimant's treating surgeon, Dr. McLean, explained that osteochondritis dissecans, or OD, is a condition of "the articular surface of a bone involving the joint, wherein, for reasons not well understood, the vascular supply to that region of bone becomes interrupted and the bone essentially dies." As a "secondary result of the destruction of the bone," the articular cartilage also loses strength. The ALJ found,

and all the medical evidence indicates, that claimant's osteochondritis dissecans was a preexisting condition.[1] According to McLean, claimant's OD increased the risk that cartilage or bone fragments would break off, but a "forceful activity," such as the fall onto claimant's left knee, would be required to cause the formation of a loose body in the knee. McLean testified, and the ALJ found, that claimant's fall caused a cartilaginous fragment or fragments to break loose in his knee. McLean also testified that, as a result of claimant's fall, his OD worsened from grade one to grade three.

The ALJ found that the knee contusion "combined with [his preexisting] OD lesion resulting in a loose body in claimant's left knee," which caused a worsening of the preexisting OD. The ALJ concluded that the claim was not compensable as a "combined condition" under ORS 656.005(7)(a)(B), but that it was compensable under ORS 656.225(1) because claimant's injury was, in the words of the statute, "the major contributing cause of a pathological worsening of the preexisting condition," here claimant's OD.

On review, the Board reversed. The Board agreed with the ALJ's finding that the knee contusion combined with claimant's preexisting condition to cause the need for treatment: It concluded that "the record shows that claimant's treatment was directed to a 'combined condition' within the meaning of ORS 656.005(7)(a)(B)." It also agreed with the ALJ's conclusion that claimant had not proved the compensability of his current condition as a "combined condition" under the terms of ORS 656.005(7)(a)(B). The Board also noted that claimant did not challenge the ALJ's determination that he did not prove that his injury was the major contributing cause of the need for treatment of the combined condition under ORS 656.005(7)(a)(B). The Board, however, disagreed with the ALJ's conclusion that claimant had established compensability under ORS 656.225(1). The Board concluded that this statute was not applicable because claimant's treatment was not directed "solely" to his preexisting condition, as the terms of that statute require.

---

[1] Employer also issued a compensability denial with respect to claimant's osteochondritis dissecans. Claimant does not challenge that denial.

On review, claimant assigns error to the Board's decision to uphold employer's denial. He contends that the Board erred in finding that his treatment was for a combined condition and in its consequent conclusion that the pertinent statute was ORS 656.005(7)(a)(B), rather than ORS 656.225(1).

■■ ORS 656.005(7)(a)(B) provides that a "compensable injury" is one that "aris[es] out of and in the course of employment requiring medical services or resulting in disability or death," if the claim is "established by medical evidence supported by objective findings, subject to the following limitation[ ]:"

> "(B) If an otherwise compensable injury *combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable* only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of *the combined condition* or the major contributing cause of the need for treatment of *the combined condition*." (Emphasis added.)

ORS 656.225 provides, in part, that:

> "In accepted injury or occupational disease claims, *disability solely caused by or medical services solely directed to a worker's preexisting condition are not compensable unless*:

> "(1) In occupational disease or injury claims other than those involving a preexisting mental disorder, *work conditions or events constitute the major contributing cause of a pathological worsening of the preexisting condition.*" (Emphasis added.)

As noted here, the Board found that claimant had a "combined condition" within the meaning of ORS 656.005(7)(a)(B) but that the condition was not compensable because claimant had not satisfied the major contributing cause test. As discussed above, claimant does not dispute the latter conclusion, but he argues that he does not have a "combined condition" within the meaning of the statute and, therefore, it simply does not apply. Accordingly, the initial question that we must resolve is whether the Board was correct in determining that this case involves a "combined condition." That question is a mixed question of law and fact.

In our recent decision in *Multifoods Specialty Distribution v. McAtee,* 164 Or App 654, 993 P2d 174 (1999), we discussed the legal meaning of the term "combined condition" as used in ORS 656.005(7)(a)(B). We stated that:

> "The term 'combine' has a broader common meaning [than the term 'involves,' as used in ORS 656.308(1)]. ['Combine'] is an adjective derived from the verb 'to combine,' which has several pertinent, plain, and ordinary meanings: 'to bring into close relationship: to join in physical or chemical union; * * * to cause to unite or associate harmoniously * * *; to cause * * * to mix together: * * * to become one: coalesce, integrate.' [*Webster's Third New Int'l Dictionary,* 452 (unabridged ed 1993)]. Thus, a combined condition may, but need not, integrate or join together two distinct conditions. A combined condition may merely bring those conditions into a close relationship or cause them to associate 'harmoniously.' There is nothing in the text or context of ORS 656.005(7)(a)(B) to suggest that the legislature intended to limit the term 'combined' to only one of those possible common meanings. We therefore conclude that a combined condition may constitute either an integration of two conditions or the close relationship of those conditions, without integration. *See* ORS 174.010; *J.R. Simplot Co. v. Dept. of Rev.,* 321 Or 253, 261, 897 P2d 316 (1995) (the court may not narrow the broad ordinary meaning of a statutory term when the text and context do not justify the limitation). Thus, a condition that 'combines' with another does not necessarily 'involve' the other." *Id.* at 662 (ellipses in original).

Here, the Board found that the knee contusion combined with claimant's preexisting OD. That finding is supported by substantial evidence in the record. As discussed above, the treating surgeon, McLean, stated that claimant's preexisting OD increased the risk that cartilage would break loose in his knee, but that a "forceful activity," such as claimant's fall onto his knee, would be required to complete the formation of a loose body in his knee. The surgeon also testified that claimant's fall broke loose the cartilaginous fragments in his knee. McLean characterized claimant's condition as a combined condition of the preexisting OD and the fall and the trauma.

■ As the definition of a "combined condition" is explained in our decision in *Multifoods,* in order for there to

be a "combined condition," there must be two conditions that merge or exist harmoniously. The Board's order does not discuss claimant's conditions in exactly those terms; the order was issued before our decision in *Multifoods*. Specifically, the Board did not explicitly find that there were two conditions here, rather than one condition made worse by claimant's fall. However, the Board's findings and conclusions implicitly indicate that it believed that there were two conditions here that combined. We hold that the Board's findings and conclusion that this claim involved a "combined condition" is within the legal meaning of the terms.

■        The remaining issue here is whether the Board was correct in its conclusion that ORS 656.225(1) is not the applicable statute. The Board concluded that that statute is not applicable, because the treatment claimant received was not directed *solely* at claimant's preexisting condition. The Board's findings that surgery was directed at a condition that resulted from a combination of the preexisting condition and the results of the knee contusion support the Board's conclusion. The text and context of ORS 656.225 clearly provide that, in order to fall within the terms of that statute, the medical services must be directed *solely* to a claimant's preexisting condition. That is not the case here. Accordingly, we conclude that the Board did not err in upholding employer's denial.

Affirmed.